Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **CASE NO. 21-31954-hdh11** |
| | § | |
| DEBTOR. | § | **CHAPTER 11** |

| | | |
|---|---|---|
| **2999TC ACQUISITIONS, LLC,** | § | |
| Plaintiff, | § | |
| v. | § | **ADVERSARY NO. _____** |
| | § | |
| **HNGH TURTLE CREEK, LLC, VIPIN** | § | |
| **NAMBIAR, HN GREEN HOLLOW** | § | |
| **CAPITAL PARTNERS, LLC,** | § | |
| Defendants. | § | |

**COMPLAINT TO AVOID AND RECOVER PREFERENTIAL AND/OR
FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §§ 548 AND 550**

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

Comes now 2999TC Acquisitions, LLC (f/k/a MO2999 TC, LLC), debtor and plaintiff herein ("**Acquisitions**" or "**Plaintiff**"), and files this, its Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer, and would show the Court the following:

**I.  NATURE OF THE CASE**

1. The Debtor filed its voluntary petition commencing its Chapter 11 bankruptcy case on October 29, 2021.

Complaint to Avoid and Recover Preferential and/or
Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550
Page 1

2. This adversary proceeding is commenced pursuant to sections 547, 548 and 550 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") to avoid and recover from the named Defendants, or from any other person or entity for whose benefit the transfer was made, preferential and/or fraudulent transfers of real property made that occurred during the 90-day or two-year period, respectively, prior to commencement of the Debtor's bankruptcy case.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction of this adversary proceeding, which arises under the Bankruptcy Code and relates to the above-captioned Chapter 11 Case pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "**Court**"), pursuant to 28 U.S.C. §§ 157 and 1334(b).

4. This adversary proceeding is a "core" proceeding to be heard and determined by this Court, pursuant to 28 U.S.C. § 157(b)(2).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

6. The statutory and legal predicates for the relief sought herein are sections 547, 548 and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

7. Pursuant to Bankruptcy Rule 7008, the Plaintiff consents to entry of final orders or judgments by this Court.

## III. PARTIES

8. Plaintiff 2999TC Acquisitions, LLC ("**Acquisitions**" or "**Plaintiff**") is a Delaware limited liability company with its principal place of business located at 13901 Midway Road, Suite 102-243, Dallas, Texas 75244.

Complaint to Avoid and Recover Preferential and/or
Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550
Page 2

9. On information and belief, Defendant Vipin Nambiar ("**Nambiar**") is a citizen of the State of Texas and a resident of Dallas County and may be served at 5722 W. Amherst Avenue, Dallas, Texas 75209.

10. Defendant HN Green Hollow Capital Partners, LLC is a Delaware limited liability company which does not have a registered agent in the State of Texas and is not registered to do business in the State of Texas. HN Green Hollow Capital Partners, LLC, therefore, may be served through the Texas Secretary of State, with copies to be mailed by the Secretary of State, deliverable to its registered agent in the State of Delaware, Capital Services, Inc., 1675 S. State Street, Suite B, Dover, Delaware 19901.

11. Defendant HNGH Turtle Creek, LLC ("**HNGH**") is a Delaware limited liability company which does not have a registered agent in the State of Texas and is not registered to do business in the State of Texas. HNGH Turtle Creek, LLC, therefore, may be served through the Texas Secretary of State, with copies to be mailed by the Secretary of State, deliverable to its registered agent in the State of Delaware, Capital Services, Inc., 1675 S. State Street, Suite B, Dover, Delaware 19901.

### IV.  FACTS

12. On September 19, 2019, Acquisitions acquired 2.47 acres of land located at 2999 Turtle Creek, Dallas, Texas (the "**Land**" or the "**Property**"), for a purchase price of $43,049,926, with a total after closing costs of $46,410,625, and, shortly thereafter, publicly announced a plan to develop the Land into a five-star Mandarin Oriental Hotel ("**Mandarin**") and branded residential project (the "**Project**"). As part of the closing on the acquisition of the Land, Acquisitions executed Deed of Trust, Security Agreement and Fixture Filing (the "**Deed of Trust**") for the benefit of 2999 Turtle Creek, LLC (the "**Lender**"), as well as a secured Promissory

Complaint to Avoid and Recover Preferential and/or
Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550
Page 3

Note in the original stated principal amount of $32,500,000 for a one-year term (subject to certain possible extensions) in favor of Lender (the "**Loan**"). The Loan is secured by the Land, valued at the closing, based upon a broker's opinion to the Lender, at approximately $50,000,000. At closing, Acquisitions contributed $17.5 million in equity and has subsequently contributed an additional $3,000,000 in equity toward the Project.

13. Both prior to and after the closing on the Loan and purchase of the Land, Acquisitions, through its manager and president, Timothy Barton ("**Barton**"), sought investments, in the form of both equity and debt, in the development and construction of the Project. Barton, as the manager of Acquisitions, had been working to acquire the Land since April 2018. Barton successfully obtained all zoning permits prior to closing of the purchase of the Land, and, shortly thereafter, Acquisitions entered into a series of management agreements with Mandarin. During August 2019, Nambiar had apparently raised, through one or more entities, approximately $42.5 million in an apparent attempt to acquire the Land in the event Acquisitions did not close on its purchase.

14. Unknown to Acquisitions and Barton at the time, Nambiar and others purchased a participation in the Loan from Lender during December 2019, and Nambiar (and others, including affiliated entities) formed HNGH Turtle Creek, LLC to be the entity that would officially be the "junior participant" in the Loan. However, apparently, Nambiar still wanted to learn more about the Project himself before finalization of the purchase of the participation interest in the Loan, as his ultimate goal was gaining ownership of the Loan and the Project.

15. In mid-January 2020, Nambiar met with Barton purportedly for the purpose of discussing a potential investment by Nambiar in the development of the Project, at which time Barton confidentially shared financial projections, capital requirements, plans and other

Complaint to Avoid and Recover Preferential and/or
Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550
Page 4

proprietary information with Nambiar. Shortly after the meeting between Nambiar and Barton, Acquisitions received notice from the Lender that, on January 24, 2020, HNGH had acquired a "junior participation interest" in the Loan and Deed of Trust under the terms of a participation agreement between the Lender and HNGH. In the notice, Lender expressly informed Acquisitions that it "shall continue to coordinate directly with Lender in accordance with the Loan Documents with respect to the servicing and administration of the Loan."

16.     At the time of the January 2020 meeting with Nambiar (an unbeknownst to Barton and Acquisitions), Nambiar already had formed HNGH in December 2019 which, on information and belief, was part of a scheme to acquire an interest in the Project and ultimately replace Acquisitions and Barton with another real estate developer and competitor. Nambiar is a principal, owner, or otherwise exercises control of HNGH. On information and belief, since some period in mid to late 2019, Nambiar and others have been devising a plan to overtake the Project from Acquisitions and Barton after they became aware of an agreement to develop the Project; however, at no time during a January 2020 meeting did Nambiar disclose his true interest and plans regarding the Project.

17.     Nambiar and HNGH effectively developed a long-term scheme to lure potential investors away from Acquisitions and Barton, take control of the Project and obtain copies of Acquisitions' building and development plans for the Project. In furtherance of such scheme:

(a)     Nambiar contacted Aju Hotels and Minkowitz and met with one or both of them at the Virgin Hotel on or around March 4, 2020, at which time Nambiar represented to them he "owned" the Loan on the Project; immediately thereafter, both investors backed out of a prior commitment to Acquisitions to the Project.

Complaint to Avoid and Recover Preferential and/or
Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550
Page 5

(b) Upon information and belief, in March 2020, Nambiar engaged or coordinated with a builder named William Hutchinson, who sent requests to the construction company retained by Acquisitions for the development of the Project to request copies of current building plans and development plans for the Project. Those plans included demolition plans of the existing structures, along with other confidential documents. Rather than contact Acquisitions or Barton directly to request information about the Project, Hutchinson (a competitor) attempted to convince the Project's construction company to release confidential information to Hutchinson directly by claiming he had an interest in moving into the existing building located on the Land. On information and belief, Nambiar and Hutchinson and HNGH had been working collaboratively for some time to obtain confidential information about the Project and lure potential investors away from the Project.

(c) In April 2020, instead of the Lender replying to Acquisitions' request for certain matters, Acquisitions received a letter from HNGH's counsel on April 6, 2020, claiming that HNGH was exercising certain rights under the Participation Agreement (to which Acquisitions was not a party nor had any knowledge about) and that HNGH was making a protective advance in excess of $345,000. Acquisitions was surprised by HNGH's letter because HNGH did not have the right to make such demands, as it was not a direct party to the Loan, and Acquisitions never consented to HNGH's participation.

(d) On April 9, 2020, HNGH sent a letter to Acquisitions, claiming to be the "senior participant," that included a proposed "pre-negotiation" agreement between HNGH and Acquisitions [the lender itself was not included in the document] that required Acquisitions to unilaterally waive certain rights and agree to onerous terms, including

Complaint to Avoid and Recover Preferential and/or
Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550
Page 6

terms under the unseen Participation Agreement, just to have a discussion. Acquisitions declined to execute such document.

18.     On April 20, 2020, based on the actions set forth above, Acquisitions instituted an action against HNGH and Nambiar in State District Court in Dallas County, Texas, as Cause No. DC-20-05864 (the "**State Court Case**"), asserting multiple causes of action, including tortious interference with an existing contract, tortious interference with prospective business relations, misappropriation of confidential information, misappropriation of trade secrets, fraud and conspiracy. During the course of the State Court Case, the Loan matured under the terms of the Note. The State Court Case was nonsuited without prejudice, and, thereafter, on October 22, 2020, Acquisitions, along with Barton, instituted an action against Lender, HNGH, Nambiar and other related parties in the United States District Court for the Northern District of Texas (Dallas Division), which included many of the same causes of action and added certain additional claims from the State Court Case.

19.     On March 1, 2021, Acquisitions and Barton, as Guarantor, and HNGH executed a "Forbearance and Payoff Agreement" (the "**Forbearance Agreement**"), which, as amended, clarified certain matters, the Loan was modified to mature July 31, 2021, with Acquisitions having the opportunity to pay monthly payments of $100,000, under which Acquisitions could extend the Maturity Date by 90 days (calculated to be October 29, 2021). Included in the requirements was that Acquisitions would execute and deliver a special warranty deed (the "**Deed**") conveying the Land to HNGH to be held in escrow by Lender's agent, "Richard Icklan," on behalf of Old Republic Title Company, as Escrow Agent, at his office in Hoboken, New Jersey, under a separate escrow agreement in lieu of foreclosure and if either (i) the Loan as modified was not "paid in full on or before" the extended maturity date of October 29, 2021 or (ii) after ten days following the

Complaint to Avoid and Recover Preferential and/or
Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550
Page 7

occurrence of a Forbearance Default and written notice thereof to Acquisitions, Lender would have the option to elect to record the Deed in the property records.

20. Prior to October 21, 2021, Barton, on behalf of Acquisitions, and Nambiar began discussing possible extensions of the arrangement as well as an agreement to market and list the Real Property for sale with a real estate broker. On October 27, 2021, Barton and Nambiar arranged via text to meet in person at the W Hotel, during which time they further discussed extension arrangements, including potential terms under which the Real Property would be marketed for sale over a 90-day period. Nambiar included his general counsel in the meeting "so he can direct lawyers" in preparation of documents. During the meeting, Nambiar stated his attorneys would draft and send to Barton extension documents. Barton advised Nambiar at that time that Acquisitions would be filing bankruptcy on Friday, October 29, if there was no extension arrangement in place. Nambiar was unconcerned and told Barton that HNGH was prepared to file a motion to lift the automatic stay if that happened, but Nambiar also told Barton that Acquisitions had a 10-day cure period, so it was not urgent to execute any extension agreement in order to further extend the maturity date of the Loan. During that October 27, 2021 meeting, Nambiar also strongly encouraged Barton to simply allow Nambiar to record the Deed and otherwise foreclose on the Real Property, upon which they could "joint venture" together to develop the Real Property without the threat of any other claims, which Barton declined to even discuss.

21. On October 28, 2021, Barton had one of his employees email a meeting request to Nambiar to have a call on the morning of October 29 to further discuss extension arrangements; Nambiar did not respond.

22. At 10:11 a.m. on October 29, 2021, Barton emailed Nambiar to have a follow-up call at 10:30 a.m. Nambiar texted back, saying he was on a "Zoom presentation until 1:30" and

Complaint to Avoid and Recover Preferential and/or
Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550
Page 8

asked to call Barton then. At 10:57 a.m., Barton sent a follow-up text, asking for the draft of the extension arrangement documents that HNGH's attorneys were supposedly preparing.

23. After Barton received no response and was unable to get a further update from Nambiar about the extension arrangements, Barton had counsel prepare an amendment to the existing documentation to propose extending the Maturity Date to November 8, 2021. The extension document was emailed to HNGH and their counsel at 11:52 a.m. on October 29, 2021; after not receiving any response, Acquisitions' counsel called and spoke with counsel for HNGH at 3:22 p.m. to inquire as to the status and whether such counsel was aware that the parties had been discussing an extension and whether such counsel was working on extension documents. HNGH's counsel stated that, although he had been in contact with Nambiar, he had not been instructed to work on any extension documents. At 4:17 p.m., counsel for Acquisitions again spoke to counsel for HNGH, at which time HNGH's counsel had no further update, and Acquisitions' counsel specifically informed HNGH's counsel that Acquisitions would be filing shortly for Chapter 11 bankruptcy.

24. After Nambiar failed to call at 1:30 p.m., Barton texted Nambiar, expressing concerns, and Barton finally texted Nambiar at approximately 5:57 p.m. that the voluntary Chapter 11 Bankruptcy petition of Acquisitions had been "filed." Nambiar responded at 6:41 p.m., advising "Ok. Let's talk Monday" and never mentioned any default or election to record a Deed. At 6:09 p.m. on October 29, 2021, shortly before Nambiar's response, Barton emailed Nambiar and others a copy of the filed Bankruptcy Petition.

25. Unbeknownst to Acquisitions, Barton or their counsel, HNGH and Nambiar and their counsel were actually working behind the scenes to simply stall Barton so he would not file the bankruptcy petition for Acquisitions before HNGH was permitted to declare a default and

Complaint to Avoid and Recover Preferential and/or
Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550
Page 9

direct the Escrow Agent to record the Deed. HNGH had claimed that the Note itself required payment by 12:30 (which Acquisitions disputes is applicable).

26. HNGH's counsel ultimately sent a copy of the recorded Deed, which was stamped as filed and recorded on Monday, November 1, 2021, at 1:40 p.m. – well after the voluntary bankruptcy petition of Acquisitions had been filed. In response, HNGH's bankruptcy counsel has asserted that the Deed had been sent to be e-recorded at 1:30 on October 29, 2021, but it was not actually stamped as recorded by Dallas County until the file stamped date and time of November 1, 2021 at 1:40 p.m. However, the certification from Dallas County printed on the recorded deed certifies that the deed was "filed in the file number sequence on the date/time printed hereon [November 1, 2021 at 1:40] and was duly recorded."

27. Counsel for HNGH later produced an email from Mindy Coover, who is not the Escrow Agent but rather claims to be a Vice President at Old Republic National Title Insurance Company in Dallas, Texas, who claimed to have sent the Deed to be e-recorded allegedly at 4:18 p.m. CST on October 29, 2021, although, according to Dallas County's instructions regarding e-Recording, the county requires any filings to be e-Recorded prior to 3 p.m. in order to be recorded on the same day. Thus, such e-recording of the Deed occurred well after the Chapter 11 bankruptcy petition of Acquisitions had been filed.

## V. CLAIMS FOR RELIEF

### COUNT I

### (Avoidance of Preferential Transfer – 11 U.S.C. § 547)

28. Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

Complaint to Avoid and Recover Preferential and/or
Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550
Page 10

29. During the 90-day period prior to the filing of the Plaintiff's Bankruptcy Case (the "**Preference Period**"), pursuant to the Deed the Debtor transferred to Defendant HNGH the Property (the "**Transfer**"), which had an approximate value of $50 million or more.

30. The Transfer constituted a transfer of an interest in property of the Debtor.

31. During the Preference Period, Defendant HNGH was a creditor at the time of the Transfer by virtue of the Loan and Note, for which the Plaintiff was obligated to pay.

32. The Transfer was to or for the benefit of a creditor [HNGH] within the meaning of Section 547(b)(1) of the Bankruptcy Code, because the Transfer either reduced or fully satisfied a debt or debts then owed by the Plaintiff.

33. The Transfer was made for, or on account of, an antecedent debt owed by the Plaintiff to Defendant HNGH before such Transfer was made, as asserted by HNGH and Nambiar and memorialized in the Deed in Escrow Agreement, which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of HNGH prior to being paid by the Plaintiff by HNGH completing by dating October 29, 2021 and then recording the Deed.

34. The Transfer was made while the Plaintiff was insolvent. Plaintiff is entitled to the presumption of insolvency for the Transfer made during the Preference Period pursuant to Section 547(f) of the Bankruptcy Code.

35. The Transfer was made during the Preference Period.

36. As a result of the Transfer, HNGH received more than HNGH would have received if (i) the Plaintiff's Bankruptcy Case was under chapter 7 of the Bankruptcy Code; (ii) the Transfer had not been made; and (iii) HNGH received payments of its debts under the provisions of the Bankruptcy Code.

Complaint to Avoid and Recover Preferential and/or
Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550
Page 11

37. In accordance with the foregoing, the Transfer is avoidable pursuant to Section 547(b) of the Bankruptcy Code.

38. HNGH was the initial transferee of the Transfer.

39. Based upon the foregoing, Plaintiff is entitled to an order and judgment against HNGH (i) avoiding the Transfer under section 547(b) of the Bankruptcy Code; and (ii) entitling Plaintiff to recover the Transfer or the value of the Transfer from Defendants under Section 550(a) of the Bankruptcy Code, together with the award of pre- and post-judgment interest thereon from the date of demand to the date of payment or other satisfaction of such order and judgment and the costs of this action.

## COUNT II

### (Avoidance of Fraudulent Conveyance – 11 U.S.C. §§ 548(a)(1)(B))

40. Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

41. To the extent that the Transfer was not on account of an antecedent debt, the Plaintiff did not receive reasonably equivalent value in exchange for such transfer ("Potentially Fraudulent Transfer"); and

    a. The Plaintiff was insolvent on the date that the Transfer(s) was made or became insolvent as a result of the Transfer(s);

    b. The Plaintiff was engaged in a business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Plaintiff was an unreasonably small capital; or

    c. The Plaintiff intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

Complaint to Avoid and Recover Preferential and/or
Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550
Page 12

42. The Potentially Fraudulent Transfer is avoidable pursuant to Section 548(a)(1)(B) of the Bankruptcy Code.

## COUNT III

### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

43. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

44. Plaintiff is entitled to avoid the Transfer and any Potentially Fraudulent Transfer pursuant to Sections 547 and 548 of the Bankruptcy Code (collectively, "**Avoided Transfer**").

45. HNGH was the initial transferee of the Avoided Transfer or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoided Transfer was made.

46. Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover the Avoided Transfer from HNGH, plus the costs of this action.

## COUNT IV

### (Disallowance of All Claims – 11 U.S.C. § 502(d) and (j))

47. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

48. HNGH is an entity from which the Property is recoverable under Section 550 of the Bankruptcy Code.

49. HNGH is a transferee of the Avoided Transfer avoidable under Sections 547 and/or 548 of the Bankruptcy Code.

50. HNGH has not turned over the Property or paid the value of the Avoided Transfer, for which HNGH is liable under Section 550 of the Bankruptcy Code.

51. Pursuant to Section 502(d) of the Bankruptcy Code, any and all claims of HNGH against the Plaintiff's Chapter 11 estate must be disallowed until such time as HNGH turns over

Complaint to Avoid and Recover Preferential and/or
Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550
Page 13

the Property to the Plaintiff or pays to Plaintiff an amount equal to the value of the Avoided Transfer, plus interest thereon and costs.

## COUNT V

### (Fraud by Nondisclosure – HNGH, Nambiar and HN Green Hollow Capital Partners, LLC)

52. Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs as though they were set forth herein.

53. Nambiar, HN Green Hollow Capital Partners, LLC, HNGH and others concealed from or failed to disclose facts to Plaintiff. Specifically, Nambiar, HNGH and HN Green Hollow Capital Partners, LLC sought confidential and secret information from Plaintiff while concealing that the group had formed HNGH for the purpose of orchestrating a scheme to wrongfully foreclose on the Project or take the Property from Acquisitions. Nambiar, HNGH, HN Green Hollow Capital Partners, LLC and others had a duty to disclose these facts to Plaintiff because Plaintiff had provided Nambiar and others with confidential and secret information. Nambiar, HNGH and HN Green Hollow Capital Partners, LLC, as well as others, knew that Plaintiff was ignorant of the facts of the formation of the group and its intentions and did not have an equal opportunity to discover those facts.

54. By failing to disclose the plan and the information obtained, Nambiar, HNGH and HN Green Hollow Capital Partners, LLC intended to and, in fact, did induce Plaintiff and Barton to disclose confidential and secret information, which Plaintiff relied upon the nondisclosure by Nambiar, HN Green Hollow Capital Partners, LLC and HNGH, and Plaintiff suffered insignificant injury as a result.

Complaint to Avoid and Recover Preferential and/or
Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550
Page 14

## COUNT VI

### (Fraudulent Inducement – Nambiar and HNGH)

55. Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs as though they were set forth herein.

56. Nambiar and HNGH made false representations to Plaintiff in connection with the Loan, the Deed of Trust, the Forbearance Agreement and other documents, specifically that Nambiar, individually and on behalf of HNGH, would act in good faith in dealing with Plaintiff and Barton regarding the Loan, the Deed of Trust, the Forbearance Agreement and other documents.

57. Nambiar, individually and on behalf of HNGH and HN Green Hollow Capital Partners, LLC, made the statements to induce Plaintiff to enter into the Forbearance Agreement and to continue the Loan and the Deed of Trust and to deliver a Deed into escrow. Plaintiff justifiably relied on such misrepresentations by entering into the documents and delivering the Deed into escrow. Nambiar, individually and on behalf of HNGH and HN Green Hollow Capital Partners, LLC, by his conduct described herein, was both willful and malicious, and, as a result, Plaintiff is entitled to recover punitive damages from Nambiar, HNGH and HN Green Hollow Capital Partners, LLC.

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant relief and enter a judgment against Nambiar, HNGH and HN Green Hollow Capital Partners, LLC as follows:

A. that the Avoided Transfer avoidable under Sections 547 and/or 548 of the Bankruptcy Code, be avoided;

Complaint to Avoid and Recover Preferential and/or
Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550
Page 15

B.     that the Avoided Transfer, to the extent that it is avoided pursuant to Sections 547 and/or 548 of the Bankruptcy Code, be recovered by Plaintiff pursuant to Section 550 of the Bankruptcy Code;

C.     that any and all claims held by HNGH be disallowed in accordance with Section 502(d) of the Bankruptcy Code until HNGH satisfies the judgment;

D.     that pre-judgment interest be awarded at the maximum legal rate running from the date of filing of the Complaint to the date of judgment herein;

E.     that post-judgment interest be awarded at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs;

F.     that Defendants be required to turn over the Property and/or pay forthwith the judgment amount awarded in favor of Plaintiff;

G.     that Plaintiff be awarded punitive damages against Nambiar, HNGH and HN Green Hollow Capital Partners, LLC; and

H.     that the Plaintiff be granted such other and further relief as the Court deems just and proper.

Dated: November 11, 2021.

Respectfully submitted,

   /s/ Joyce W. Lindauer
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
ATTORNEYS FOR 2999TC ACQUISITIONS, LLC, PLAINTIFF AND DEBTOR

Complaint to Avoid and Recover Preferential and/or
Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550
Page 16